## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**WENDELL KIRKLAND and
ANTHONY KIRKLAND,**

       **Plaintiffs,**

  **v.**

**LOUIS M.J. DiLEO,
and the CITY OF LINDEN**

       **Defendants.**

Civ. No. 2:12-1196 (KM)


**OPINION**

---

**KEVIN MCNULTY, U.S.D.J.:**

    Plaintiffs, Wendell Kirkland and Anthony Kirkland, bring this civil rights action against City of Linden Municipal Judge Louis DiLeo and the City of Linden. The Complaint seeks damages under 42 U.S.C. § 1983 for violations of the Sixth and Fourteenth Amendments to the United States Constitution. It asserts a related claim for conspiracy to deprive Plaintiffs of their civil rights, pursuant to 42 U.S.C. § 1985.  And it asserts corresponding violations of the right to counsel and due process provisions of the New Jersey Constitution. These claims arise out of the manner in which Judge DiLeo presided over a prosecution brought against Wendell and Anthony Kirkland in Linden Municipal Court.

    Currently before the Court are separate motions to dismiss the complaint, filed by Defendants, DiLeo and the City of Linden. The two most

important issues asserted are these: First, Defendants assert that the
Kirklands' claims must be dismissed because the Linden Municipal Court is an
"arm of the state" entitled to Eleventh Amendment immunity. Second,
Defendants maintain that DiLeo is entitled to absolute judicial immunity for
his actions in presiding over the Kirklands' trial.

I am mindful that immunity issues should be decided as early as is
practicable, but I find that Plaintiffs have alleged enough to entitle them to go
forward with discovery. For the reasons set forth below, Defendants' motions
are **DENIED**.

## I.     BACKGROUND

Wendell and Anthony Kirkland were arrested and initially charged with
several crimes triable in Superior Court, including theft by unlawful taking,
possession of burglary tools, and possession of marijuana. The Union County
Prosecutor's Office downgraded the charges to disorderly persons violations
and remanded them to Linden Municipal Court. (*See* Schwartz Decl., Ex. A, at
¶¶ 12-13, ECF no. 7-1.)

On April 12, 2010, Judge DiLeo presided over the Kirklands'
arraignments. (Complaint, ¶¶ 11-17, ECF no. 1.) During their arraignments,
DiLeo advised the Kirklands of the charges against them and advised them of
the possible consequences, including jail time, in the event of conviction. (*Id.* at
¶ 14.) The Kirklands were also advised of their right to counsel and the
appointment of a public defender if they were indigent. Both Anthony Kirkland

and Wendell Kirkland advised Judge DiLeo that they wished to retain private counsel. (*Id.* at ¶ 15.)  Judge DiLeo gave the Kirklands until May 3, 2010, to retain counsel, and advised them that by electing to retain private counsel they had waived their right to the appointment of a public defender. (*Id.* at ¶ 16.)

On May 3, 2010, Judge DiLeo presided over a conference at which both Anthony and Wendell Kirkland appeared *pro se.* When Judge DiLeo asked the Kirklands if they had retained counsel, Wendell Kirkland said "Just give me the public defender." (*Id.* at ¶ 19.)[1] Judge DiLeo told the Kirklands that they had "waived the public defender" and he scheduled the matter for trial nine days later, on May 12, 2010. (*Id.* at ¶ 20-23.)

On May 12, 2010, Judge DiLeo presided over the Kirklands' trial, which began at 9:13 p.m. and concluded at 10:05 p.m. (Complaint ¶ 25.) It is undisputed that Judge DiLeo conducted the trial in the absence of defense counsel and the municipal prosecutor. The only participants in the trial were the Kirklands, the arresting police officer, and Judge DiLeo. (*Id.*)

There being no prosecutor in the courtroom, Judge DiLeo conducted the direct examination of the arresting officer and thereafter permitted Anthony and Wendell Kirkland, *pro se*, to cross-examine him. (*Id.* at ¶ 26.) At the conclusion of the officer's testimony, Judge DiLeo asked the officer if he had any other evidence to present, to which the officer responded, "There's no evidence here." (*Id.* at ¶ 27.) That statement was all too accurate. Although the

---

[1] Anthony Kirkland's response was inaudible. It is undisputed that Anthony Kirkland did not retain private counsel.

Kirklands had been charged with possession of marijuana, the police officer did not submit into evidence the substance that was seized, nor did he produce laboratory test results confirming that the substance was marijuana. Judge DiLeo asked the officer if he intended to "rest" his case, to which the officer responded "yes." (*Id.* at ¶ 28.)

Following the police officer's testimony, Judge DiLeo gave the Kirklands an opportunity to present any witnesses in their defense. The Kirklands advised Judge DiLeo that they had witnesses, but that the witnesses were not present. Judge DiLeo found there to be no witnesses for the defense and proceeded. (*Id.* at ¶ 29.)

Thereafter, Judge DiLeo advised the Kirklands of their Fifth Amendment right against self-incrimination and provided them the opportunity to testify in their own defense. Both Anthony and Wendell testified. They were cross-examined by the arresting police officer. Following the police officer's cross-examination, Judge DiLeo questioned Anthony Kirkland at length about his conduct on the evening in question. Judge DiLeo then questioned the arresting officer again about the events surrounding the arrests. (Complaint ¶¶ 30-31.)

At the conclusion of the trial, Judge DiLeo found both men guilty on all charges, including possession of marijuana. (*Id.* at ¶ 32.) Judge DiLeo sentenced Wendell Kirkland to 180 days in the county jail, "day for day,"[2] three consecutive one-year probationary terms, and fines totaling $2,700. (*Id.* at ¶ 33.) Anthony Kirkland was sentenced to *two* "day for day" consecutive 180 day

---

[2]     This phrase was apparently intended to foreclose eligibility for parole.

jail terms, three consecutive one-year probatory terms, and fines totaling $3,100. (*Id.* at ¶ 34.) Wendell and Anthony Kirkland were taken into custody immediately and remanded to the Union County Jail. (*Id.* at ¶ 38.) Each was incarcerated for 180 days. (*Id.* at ¶ 70.)

The Kirklands successfully appealed their convictions. Judge Scott Moynihan of the Union County Superior Court presided over the appeal. Judge Moynihan found both men not guilty of the possession of marijuana charge and remanded the remaining charges to the Elizabeth Municipal Court for a new trial. (*Id.* at ¶ 46.) Judge Moynihan characterized the trial as a "perversion of justice" and cited multiple instances in which Judge DiLeo violated the Kirklands' constitutional rights. (*Id.* at ¶ 47.)[3]

Anthony and Wendell Kirkland have now filed this action against Judge DiLeo and the City of Linden.

## II.   STANDARD OF REVIEW

Defendants assert their Eleventh Amendment objection by way of a motion to dismiss under FED. R. CIV. P. 12(b)(6). The Eleventh Amendment, however, "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n. 2 (3d Cir. 1996) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89,

---

[3]   An order to show cause why Judge DiLeo should not be removed and disqualified from further public office is pending before the New Jersey Supreme Court, with a return date of April 30, 2013.
http://www.judiciary.state.nj.us/pressrel/2013/D-66-12%20DiLeo%20ACJC%20OSC.pdf

98-100, 104 S.Ct. 900, 906-07, 79 L.Ed.2d 67 (1984)). Accordingly, the
motions may properly be considered as motions to dismiss the Complaint for
lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1).

Motions to dismiss for lack of subject matter jurisdiction pursuant to
FED. R. CIV. P. 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.,*
67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges may be
either facial or factual attacks. *See* 2 MOORE'S FEDERAL PRACTICE § 12.30[4] (3d
ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.
1977). A facial challenge asserts that the complaint does not allege sufficient
grounds to establish subject matter jurisdiction. *Iwanowa,* 67 F. Supp. 2d at
438. A court considering such a facial challenge assumes that the allegations
in the complaint are true, and may dismiss the complaint only if it nevertheless
appears that the plaintiff will not be able to assert a colorable claim of subject
matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.,* 721
F.2d 68, 75 (3d Cir. 1983);  *Iwanowa,* 67 F. Supp. 2d at 438.

Defendant DiLeo's argument that he is immune from suit based on the
Eleventh Amendment constitutes a facial challenge to the jurisdictional basis
asserted in the Complaint.[4] Accordingly, the Court will take the allegations of

---

[4]    The City's motion is accompanied by an attorney declaration that attaches three
documents – the complaint in this action, an ethical complaint against Judge DiLeo,
and Judge DiLeo's answer to that complaint. I believe this was done as a courtesy, to
direct the Court's attention to public matters of which it could take judicial notice,
even on a motion to dismiss. I do not find that this would convert the motion to a
factual challenge or a motion for summary judgment, and the Plaintiffs did not
respond to it as such.

the Complaint as true in considering those arguments. *See Gould Elecs., Inc. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

In addition, and in the alternative, the motions seek dismissal for failure to state a claim. Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin,* 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case*, infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.,* 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

### III. DISCUSSION

#### A. Judicial Immunity

As a judge, Defendant DiLeo enjoys absolute immunity for "judicial acts." *Stump v. Sparkman*, 435 U.S. 349 (1978). Judge DiLeo moves to dismiss the Complaint, asserting that its claims are based solely on his judicial acts.

In *Stump*, the Supreme Court announced a two-part test for determining whether an act is a judicial one. The first factor—whether the act was a function normally performed by a judge—relates to the "nature of the act itself." *Id.* at 362.  Thus the inquiry is somewhat generic. "[I]f only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge." *Mireles v. Waco*, 502 U.S. 9, 12 (1991). "If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" *Id.* at 12-13 (quoting *Stump*, 435 U.S. at 362). Accordingly, "the relevant inquiry is the 'nature' and 'function' of

the act, not the 'act itself.' In other words, we look to the particular act's relation to a general function normally performed by a judge." *Id.* at 13.

The second *Stump* factor—whether the parties dealt with the judge in his judicial capacity—looks to the "expectations of the parties." *Stump,* 435 U.S. at 362.

Judge DiLeo would be absolutely immune from suit based on actions and decisions that are judicial in nature, even if they turned out to have been taken in error or in excess of his authority. Here, however, the basis of the Kirklands' claim is that Judge DiLeo acted, not as a neutral arbiter of disputes, but as a prosecutor or advocate, and moreover that he did so in violation of all judicial norms.

To be sure, convicted defendants, when criticizing adverse rulings, will commonly exaggerate, stating for example that the judge took the State's side or acted as a "second prosecutor." Still, the "second prosecutor" charge loses some of its exaggerated flavor when we consider that Judge DiLeo tried this criminal case unaided by counsel on either side of the aisle. He delegated the State's cross-examination of the Defendants to a police officer who had himself just testified as a fact witness. Judge DiLeo then took over the examination himself. I do not say, of course, that a municipal court proceeding must incorporate all of the procedural safeguards of a full felony trial, or that a judge may never question a witness. But there is a plausible allegation here that the conduct of this trial went beyond legal error, to the point that Defendant DiLeo

was no longer truly functioning as a judge. Of course, plaintiffs have not made their case (nor would they be expected to at this stage). Neither has Judge DiLeo told his side of the story, legally or factually, to this Court. Indeed, at this stage I do not even have the trial transcript before me. At this early stage, I cannot say that the allegations, taken as true, could not make out a case that would withstand a judicial immunity challenge. I am mindful that immunity determinations should be made as early as possible, but a determination would be premature at this point.

Plaintiffs have a very heavy burden here, and they may not ultimately carry it. But based on the allegations of the Complaint, this case may go forward on the issue of whether Judge DiLeo so grossly departed from the judicial role as to shed his judicial immunity. Discovery may be had on the nature and function of Defendant DiLeo's acts during the Kirklands' trial.

### B. Claims Against DiLeo in His Official Capacity as a Judge of the Linden Municipal Court: Eleventh Amendment Immunity

Defendant DiLeo asserts that, as a Judge of the Linden Municipal Court, he partakes of the State's Eleventh Amendment immunity from suit. He seeks to dismiss the claims insofar as they are brought against him in his official capacity.[5]

---

[5]     The Eleventh Amendment may bar claims against a state official in his official capacity. The Complaint also asserts certain of its claims against Defendant DiLeo in his individual capacity. A person, even a state official, sued in his individual capacity is not shielded by the Eleventh Amendment.
   "[S]ince *Ex parte Young*, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908)," we said, "it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had

The Eleventh Amendment to the Constitution of the United States guarantees the states' immunity from certain claims: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Despite the seemingly limited scope of its wording, the Eleventh Amendment has long been held to incorporate a more general principle of sovereign immunity that bars citizens from bringing suits for damages against any state in federal court. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *see also Kelley v. Edison Twp.*, No. 03–4817, 2006 WL 1084217, at *6 (D.N.J. Apr. 25, 2006) (citing *Bennett v. City of Atl. City*, 288 F. Supp. 2d 675, 679 (D.N.J. 2003)).

The Eleventh Amendment immunity applies "even though the state is not named a party to the action, as long as the state is the real party in interest." *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999) (quotations and emphasis omitted); *see also Chisolm v. McManimon*, 275 F.3d 315, 322-23 (3d Cir. 2001) ("Eleventh Amendment immunity may be available to a state party-

---

deprived another of a federal right under the color of state law." [citing *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687 (1974).] While the doctrine of *Ex parte Young* does not apply where a plaintiff seeks damages from the public treasury, damages awards against individual defendants in federal courts "are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." 416 U.S., at 238, 94 S.Ct., at 1687. That is, the Eleventh Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983. *Ibid.*

*Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358 (1991).

in-interest notwithstanding a claimant's failure to formally name the state as a defendant.") And the state is the real party in interest to a lawsuit if the named defendant is in fact an "arm of the state." *See Chisolm*, 275 F.3d at 323; *Carter*, 181 F.3d at 347.

To determine whether a defendant is an "arm of the state" and therefore protected by the Eleventh Amendment, courts in this Circuit examine three factors (the "*Fitchik* factors"): "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." *Chisolm*, 275 F.3d at 323 (citing *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)). The Defendant, as the party claiming Eleventh Amendment immunity, has the burden to establish it. *Id.*

The first *Fitchik* factor has repeatedly been held to be "the most important factor" in the analysis. *Chisolm*, 275 F.3d at 323 (citing cases). I am unable to conclude from the face of the Complaint that the payment of any judgment arising out of this suit would come from the state treasury. Plaintiffs in their briefs claim that it would not, and DiLeo does not appear to deny it. This would tend to suggest that the Linden Municipal Court is not an arm of the State, but is more akin to a local entity or a municipal subdivision for Eleventh Amendment purposes.

The second and third *Fitchik* factors are interrelated. The second requires an inquiry into the status of the Linden Municipal Court (and its judges) under state law, i.e., "whether state law treats an agency as independent, or as a

surrogate for the state." *Fitchik*, 873 F.2d at 662. The third requires an inquiry into the Linden Municipal Court's "degree of autonomy" in relation to the State of New Jersey. The greater the court's autonomy, the more likely it is that its judges are subject to suit under 42 U.S.C. § 1983.

As to factors two and three, Plaintiffs stress that the Linden Municipal Court was created and funded by the municipality. They allege that DiLeo is an employee of the City of Linden, not the State of New Jersey, and that he was appointed by the Mayor of Linden and confirmed by the Linden City Council. The Complaint stresses that the City of Linden shares the blame for Judge DiLeo's actions, but at no point implicates the State itself. Judge DiLeo emphasizes the status of the Linden Municipal Court as part of a unified state-wide judicial system. The judicial power exercised by municipal court judges, he argues, is the judicial power of the State. *See Knight v. City of Margate*, 86 N.J. 374, 385 (1981).[6]

This Eleventh Amendment motion, as noted above, is a facial challenge. But the allegations of the Complaint, even as supplemented by judicial notice, *see Cardio–Med. Assoc.*, 721 F.2d at 75, do not compel a conclusion that the Plaintiffs cannot surmount the Eleventh Amendment barrier. *See Iwanowa*, 67 F. Supp. 2d at 438. For example, I lack any real information about the source of payment of any judgment, the funding of the Linden Municipal Court, or the degree of autonomy it possesses. I will therefore permit Plaintiffs' official-

---

[6]     This issue is also potentially intertwined with the judicial immunity issue. As discussed above, Plaintiffs allege that Judge DiLeo acted so far outside his authority that he was in effect not functioning as a judge at all.

capacity claims against Judge DiLeo to go forward so that discovery may be had on the "arm of the state" issue. When both sides have had a fair opportunity to gather the necessary facts, one or both Defendants may wish to bring a motion to dismiss for lack of jurisdiction on a factual, rather than a facial, basis. I will direct the Magistrate Judge to permit such directed discovery so that a determination of this issue may be made as early as is practicable.

### C.  Claims Against the City of Linden

The City of Linden asserts some of the same bases for dismissal asserted by Defendant DiLeo.[7] As to these, my rulings are the same.

There is an additional potential bar to the liability of the City of Linden. In a federal civil rights action, municipal liability may not be founded on *respondeat superior*; there must be evidence that the government unit itself supported a violation of constitutional rights. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir. 1990). Municipal liability attaches only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Bielevicz* , 915 F.2d at 850 (quoting *Monell*, 436 U.S. at 694.)

---

[7]      Linden does not, however, assert the State's Eleventh Amendment immunity, which, as a local municipality, it does not share. *See Jinks v. Richland County*, 538 U.S. 456, 466, 123 S. Ct. 1667, 155 L. Ed. 2d 631 (2003); *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)). Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as to virtually constitute law. *Bielevicz*, 915 F.2d at 850.

Here, the Kirklands allege that the City of Linden is liable because "[t]he severe and pervasive Constitutional violations were the long standing practice and policies of the City of Linden." Without the benefit of discovery, Plaintiffs cite to similar conduct in at least one other case. At the Complaint stage, these allegations suffice to set forth a plausible claim that the City of Linden tacitly endorsed a practice of denying defendants their constitutional rights.

I will therefore deny the City's motion to dismiss the Complaint. I will allow the case to go forward so that discovery can be had on the merits as well as on the duration and frequency of unconstitutional practices in the Municipal Court, the City's actual or constructive knowledge of such practices, and such other issues as may be relevant to the "custom" issue.

### D. Conspiracy and State Claims

The Kirklands also allege that the City of Linden and Judge DiLeo conspired to deprive them of their constitutional rights. Title 42, United States Code, Section 1985(3), permits a plaintiff to bring a claim that two or more

people have acted together to deprive him of his civil rights. A plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)).

Plaintiffs believe that discovery will reveal that the City of Linden at least knew of and acquiesced in Judge DiLeo's methods. To be sure, the Kirklands' theory is hardly overwhelming, but it possesses some factual plausibility, given the allegedly extreme deviation from acceptable procedure. Particularly in light of the information asymmetry between the parties, I will permit the conspiracy claim to go forward so that discovery can be had.

Plaintiffs' state law claims are to some degree redundant. They will at least very likely depend on the viability of the federal claims. In particular, the exercise of supplemental jurisdiction, *see* 28 U.S.C. § 1367, will depend heavily on the jurisdictional and substantive merits of the federal claims. In addition, I find that there are potential issues of fact. I therefore will not dismiss the state claims at the present time.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **DENIED**.

An appropriate order will be filed.

KEVIN MCNULTY, U.S.D.J

**Dated: April 15, 2013**